IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 12, 2001 Session

## KELLY MAZELLE MEAGHER STILLWELL v.
## THOMAS H. STILLWELL

**Appeal from the Circuit Court for Bradley County**
**No. V-99-734     John B. Hagler, Judge**

**FILED JULY 30, 2001**

**No. E2001-00245-COA-R3-CV**

Thomas Stillwell ("Father") appeals the Trial Court's order which he claims improperly modified the original decree establishing child visitation. Father claims this was in error because there was no showing of a material change in circumstances. Father also appeals the Trial Court's order which prohibited him from possessing a firearm when he is exercising visitation with his son. We affirm the Trial Court's determination on visitation, as modified, and vacate the prohibition on Father's possessing a firearm in the presence of his child.

**Tenn. R. App. P. 3 Appeal As of Right; Judgment of the Circuit**
**Court Affirmed in Part as Modified, and Vacated in Part; Case Remanded**.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

B. Prince Miller, Cleveland, Tennessee for the Appellant Thomas H. Stillwell.

D. Mitchell Bryant, Cleveland, Tennessee for the Appellee Kelly Mazelle Meagher Stillwell.

## OPINION

### Background

After Kelly Mazelle Meagher Stillwell ("Mother") filed for divorce, the parties entered into a Marital Dissolution Agreement ("MDA") which divided the marital estate and provided for the care and custody of the parties' minor son who was born on November 1, 1997. The portion of the MDA relevant to this appeal pertains to custody and visitation, and provides as follows:

> **CUSTODY:** The parties stipulate that each is a loving, caring, dutiful parent and capable of providing for the care, maintenance and support of their minor child. The parties agree to a shared, joint custody of the minor child with the primary physical custody of the child to remain with [Mother].
>
> The parties have worked with one another, around the hours of [Father's] dental practice, in order to ensure that he is able to spend quality time with the child and the parties will continue to do so, in the future.
>
> * * * *
>
> **VISITATION:** For purposes of complying with the statute, [Father] shall have minimum visitation rights to be established as follows:
>
> a.   Every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. . . .

The MDA also set forth the visitation schedule for the various holidays and summer vacations, etc. The Trial Court entered a Final Decree of Divorce and incorporated the MDA into its final decree.

Approximately six months after the final decree was entered, Mother filed a petition to modify claiming that, notwithstanding the minimum visitation rights set forth in the MDA, she had allowed Father additional visitation with their minor child. Mother claimed that Father was now insisting on this additional visitation. Mother alleged that when she asked Father to limit this additional visitation, he would harass and berate her. Mother also asserted that Father was carrying a loaded weapon at all times and she was fearful that the child may find the weapon. Mother requested the Trial Court restrain Father from coming about her home on a daily basis and to impose restrictions on Father's having weapons around the child. Father then filed a Petition for Contempt claiming, among other things, that Mother had interfered with his visitation rights.

For a few months after the parties were divorced, they essentially lived next door to each other and shared a yard. In the evenings, Father would play in the yard with his son, and, for the most part, they had daily contact. Several months after the divorce, Father moved a short distance away and no longer lived next to Mother. At the hearing on the motions, Father testified that he and Mother agreed that he could exercise visitation on Tuesday, Wednesday, and Thursday evenings. Father asked the Trial Court to enforce this informal post divorce decree agreement.

Mother testified that after she and Father separated, she was not working and her schedule allowed her to be flexible with Father so as to allow him daily contact with their son. After the divorce, Mother secured employment and her schedule was not as flexible. Mother testified that the first time she told Father that it would be inconvenient for him to come to her house to see their son, he demanded to see his son and showed up at her house anyway. Mother claims Father then took the child without her permission. Mother testified that she first allowed Father to exercise more visitation than provided for in the final decree, but when she attempted to cut back on this extra visitation, he would "bully" her and threaten to take custody of the child. Mother stated that she never denied Father any of the required minimum visitation set forth in the final decree. Mother admitted that after they were separated, Father would see their son almost every day, but at that time they essentially shared the same back yard.

Mother testified that Father is a diabetic and sometimes he is not "all the way in control of himself" when his sugar level is low. It is for this reason she requested that Father be prohibited from carrying a weapon when the child is present. The only specific incident she testified to occurred when she was five months pregnant and Father had an insulin reaction and began "fumbling" with a gun.

Father testified that he has not had an insulin reaction requiring medical attention since the parties separated. Father testified he keeps all of his guns securely locked up except for the one he carries on his person. When this gun is not on his person, it is put up where the child cannot get to it but where Father can retrieve it if necessary. Father admitted that when he was dating Mother, he had an insulin reaction while driving which resulted in an automobile accident. With regard to visitation with his son, Father stated that notwithstanding the minimum visitation set forth in the final decree, he and Mother had an agreement for expanded visitation.

The Trial Court concluded that there was a legitimate safety issue in light of Father's diabetes and ordered "that there shall be no guns, of any sort, around the child while he is visiting with [Father] . . . and that any guns in his home when the child is there, shall be locked up and kept out of his control." As to vistation, the Trial Court found no material change in circumstances and also noted that any agreement between the parties was no longer working. In addition to the minimum visitation set forth in the MDA, the Trial Court allowed Father visitation on alternating Wednesdays for four hours. Husband appeals both determinations.

**Discussion**

A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo*, without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). Once visitation decisions are made and implemented, they are res judicata upon the facts in existence or reasonably foreseeable when the decision is made. *Young v. Smith*, 193 Tenn. 480, 485, 246 S.W.2d 93, 95 (1952); *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998). Visitation decisions may be altered if intervening, material changes in circumstances require modification. *Solima*, 7 S.W.3d at 32.

The MDA, as incorporated into the final decree, provides that: "The parties have worked with one another, around the hours of [Father's] dental practice, in order to ensure that he is able to spend quality time with the child and the parties will continue to do so, in the future." According to Father, he and Mother were working with each other and had agreed he could exercise visitation on Tuesday, Wednesday, and Thursday evenings. Thus, Father contends that this informal agreement was modified by the Trial Court when he was allowed visitation only on every other Wednesday, as opposed to what had been agreed to by the parties. Since the Trial Court found that there had been no material change in circumstances, Father argues that this agreed-to visitation could not be altered.

The language in the MDA which Father relies upon certainly lacks any precision with regard to exactly what amount of visitation was contemplated. The minimum visitation set forth later in the MDA does not lack this precision. This conclusion is reinforced by the following oral pronouncement made by the Trial Court following the hearing:

> [The MDA, which was incorporated into the final decree,] indicates that the mother is the primary custodian. There's been no material change of circumstances whatsoever that would change that. And I cannot try to figure out what kind of arrangements might have been going on during the period of separation or what might have been the status quo at the time of the divorce unless it's spelled out specifically in the agreement and the court order.

We do not believe the language in the MDA relied upon by Father allows us to conclude that it entitles him to visitation on Tuesday, Wednesday, and Thursday evenings. If that is what the parties actually intended, then the section of the MDA titled "Visitation" would be rendered ineffective, at least in part, because visitation on those three evenings is not mentioned. We conclude that the visitation which Father actually was granted is that contained in the section of the MDA titled "Visitation". While parents certainly are encouraged to work with each other to allow the non-custodial parent greater visitation than what is set forth in a court order, this does not entitle the parent receiving additional visitation to have such an informal agreement enforced by a

-4-

court, absent a showing of a material change in circumstances and that it is in the child's best interests.

The Trial Court found no material change of circumstances relating to visitation after the entry of the final decree which incorporated the MDA. The evidence does not preponderate against Trial Court's finding of no material change of circumstances. Therefore, we conclude that the section of the MDA titled "Visitation" sets forth the visitation to which Father is entitled. The Trial Court's resolution of the motions modified Father's visitation originally established in the final decree in two ways: First, the MDA granted Father visitation for two non-consecutive weeks during the summer, with each week consisting of seven days. The subsequent order makes no mention of these two weeks of visitation. While it is unclear if this was merely an oversight on the part of the Trial Court, we modify the order to reinstate this two week visitation period to Father as originally provided in the MDA. The second change was the granting to Father of visitation on every other Wednesday for a four hour period. Mother does not appeal this additional visitation, and, therefore, we affirm this change.

The second issue on appeal is the propriety of the Trial Court's prohibiting Father from carrying a weapon in the presence of the child and ordering that all guns be locked up when Father is exercising visitation. Father argues that the Trial Court's order violates his right to bear arms under both the Second Amendment to the United States Constitution as well as Article I, Section 26 of the Tennessee Constitution.

We are guided in the resolution of this issue by the decision of our Supreme Court in *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993). In *Hawk*, the Supreme Court held that the Grandparent Visitation Act was unconstitutional as applied to the facts of that case. In so doing, the Court stated that in light of the constitutional right to privacy, "we believe that when no substantial harm threatens a child's welfare, the state lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit." *Id*. at 577. The Court went on to add that absent a substantial danger of harm to the child, "a court may not constitutionally impose its own subjective notions of the 'best interests of the child' when an intact, nuclear family with fit, married parents is involved." *Id.* at 579.

We believe the parents' constitutional right of privacy as found by our Supreme Court in *Hawk* is applicable here where we have two fit parents, even if those parents are now divorced. Additionally, we believe the constitutional rights under the Second Amendment of the United States Constitution as well as Article I, Section 26 of the Tennessee Constitution are worthy of the same protection as is the constitutional right to privacy discussed in *Hawk*. Accordingly, the Trial Court could not restrict Father's otherwise lawful possession of a firearm absent a showing of risk of substantial harm to the child. The Trial Court made no such finding. While the Trial Court did find that Mother's concerns regarding the child and the guns was a legitimate safety issue and concern, such a finding is not a finding of risk of substantial harm to the child. The testimony about the incident when Mother was pregnant (which occurred approximately three years before the hearing took place) as well as the car wreck which happened when the parties were dating is insufficient to

conclude that Father's possession of a gun places the child at risk of substantial harm, notwithstanding Father's diabetes. This is even more apparent given Father's testimony that he keeps all but one of his guns securely locked up, and the remaining gun is kept where the child cannot get to it. We also note that both of these events relied upon by Mother happened prior to the divorce and, therefore, provide no evidence of any change of material circumstances concerning this issue.

We certainly cannot overemphasize the need for extreme caution with firearms at all times, especially when children are or may be present. Nevertheless, absent a showing of risk of substantial harm to the child, we conclude that the portion of the Trial Court's order restricting Father's possession of a firearm in the presence of his child was in error, and vacate that portion of the Trial Court's order. Absent a risk of substantial harm to the child, the wisdom of Father's decision is not for the Trial Court or this Court to determine. The Trial Court made no finding of risk of substantial harm, and neither can we based upon the record before us. It is clear, however, that if Mother can show a risk of substantial harm to the child, the Trial Court can impose restrictions on Father to eliminate that risk of substantial harm.

### Conclusion

The decision of the Trial Court is affirmed in part as modified, and vacated in part. This case is remanded to the Trial Court for further proceedings as may be required, if any, consistent with this Opinion, and for collection of costs below. Costs of appeal are taxed one-half to the Appellant Thomas Stillwell and his surety, and one-half to the Appellee Kelly Mazelle Meagher Stillwell.

_____
D. MICHAEL SWINEY